THE PEOPLE EX REL. ELIZABETH F. DENNISON V. THE CIRCUIT JUDGE FOR THE COUNTY OF GENESEE.

*New Trial in Ejectment—Comp. L., § 6238.*

Payment of costs and damages is made a condition to the granting of new trials in ejectment under Comp. L., § 6238. *Held*, that payment may be made into court, to the clerk; and a payment in national bank notes is good, so long at least as it does not prejudice the party to whom it is due.

Mandamus to vacate an order for a new trial in ejectment, for want of notice to the opposite party, was denied in the discretion of the court. The right to a new trial is statutory and not to be denied, and the remedy for irregularities, if there are any, should be sought by motion in the court below.

MANDAMUS to compel the court below to vacate an order

for a new trial in ejectment. The facts are in the opinion. Submitted June 19. Decided October 9.

*Edgar A. Cooley* for the writ.

*A. C. Maxwell* against.

GRAVES, J. This is an order to show cause why a mandamus ought not to issue, and the application is opposed on the ground that as the facts appear it is inexpedient to grant it. The application shows the following circumstances: September, 1873, relator commenced ejectment against Thomas Kelley in the circuit court for the county of Bay to recover certain premises in Bay City. Kelley appeared by Holmes, Haynes & Stoddard as his attorneys and pleaded the general issue, and at some time thereafter the action was transferred to the circuit court for the county of Genesee. Subsequently there was a trial before a jury in that circuit which resulted in a verdict for relator April 2d, 1874, for the premises and damages six cents besides costs. May 20, 1874, judgment was entered on the verdict. July 23, 1874, the clerk taxed the costs at $57.34. August 19, 1874, they were retaxed at relator's instance before the court and were fixed at $69.54.

May 19, 1877, Andrew C. Maxwell, an attorney and counsellor of this court acting as counsel for Kelley, paid to the clerk of the circuit court for the county of Genesee $60 in national bank notes and $25 in United States legal tender notes and asked that $83.19 of the amount should be accepted upon and applied in payment of the damages and costs in the ejectment. The clerk returned $1.81 and accepted and retained the balance. On the same day and apparently on the same occasion Maxwell filed in court his affidavit in which he deposed that the damages and costs of the judgment in ejectment had been paid, and he also entered in the name of Holmes, Haynes & Stoddard, Kelley's attorneys, in the special motion book a motion for new trial under the statute. The court thereupon granted the motion and allowed an order to be entered for new trial under the

statute.    No paper was served on relator or her attorneys, and the clerk had no authority except such as his office gave him to receive anything on the judgment.    The mandamus is asked to compel the circuit judge to undo his action in allowing the order for new trial to be entered.

The order was permitted upon a sworn showing and this showing was legal evidence on that proceeding.    The judge had to investigate it and decide upon its legal value in view of its purpose.    He considered it sufficient.    It is now claimed to be competent to impeach that showing in an application for mandamus and then as a consequence of such impeachment to require him to set aside his action. In other words it seems to be maintained that this court in the exercise of its jurisdiction in mandamus may revise and reverse a circuit court order entered on affidavit evidence and as a means to such end may receive and act upon new affidavit evidence impeaching that on which the order was entered.    There is much room I think for questioning the correctness of this claim.    But as the case need not turn upon this point it is unnecessary to decide upon its force.

The reasons offered to support the demand for mandamus consist of objections alleged against the proceedings for new trial under the statute.

First, waiving all questions in regard to the character of the funds, it is urged that the clerk was not authorized to receive the damages and costs and that payment to him was without any effect upon the judgment.

The payment was not to the clerk as an individual or as a particular agent of either party.    The transaction was a payment into court and the clerk's hand was that of the court for the purpose.

If it was as competent to pay into court as to the relator or her attorneys under the circumstances, then the objection founded on the payment to the clerk, or rather on the place of payment, is answered.

The court had adjudged payment by defendant Kelley of the damages and costs and by law he was liable to be compelled to perform by execution on the judgment.  ·Satisfac-

tion of the judgment would regularly be produced in court and by entry in the record. And it appears to me it was entirely competent for Kelley to make voluntary payment by rendering the amount in court, the place from whence an execution would issue and the place where satisfaction of record would have to be effected. The statute providing for new trial at the election of a party (Comp. L., § 6238) simply provides that the damages and costs shall be paid. It contains no hint that payment into court would not suffice. And a ruling against the validity of such payment would fix a practice which would often serve to disappoint the manifest purpose of the provision without the least practical benefit to any one. The Legislature intended to give three full years for claiming a new trial, and it is very easy to imagine cases in which that period would be greatly abridged, and other cases in which there would be no opportunity whatever if the damages and costs could not be effectually paid into court, but would have to be paid directly to the party or some personal agent of the party. These difficulties were so plainly subject to be contemplated that the Legislature must have foreseen them, and it is not easy to suppose they were meant to be tolerated. Had the money been collected on execution the sheriff might legally have returned it into court. This was the regular course in early times, and the theory is preserved in the language of the writ. 2 Bacon's Ab. "Execution," C. 4 [Gwillim's ed.]; Vol. 3 Bouvier's ed., p. 703, (C); *Turner v. Fendall,* 1 Cranch., 117; *Dygert v. Crane,* 1 Wend., 534; *Brewster v. Van Ness,* 18 Johns., 133; *Acker v. Ledyard,* 4 Seld., 62. And no satisfactory reason appears for holding that it was not competent for the party to make voluntary payment in court where the judgment stood against him.

Second. It is also made a subject of complaint against the order of the circuit court, and a ground for claiming the intervention of this court by mandamus, that a portion of the amount paid into court consisted of national bank notes in lieu of legal tender money.

This position is extremely technical. It does not depend

upon value.   There is no question of loss or gain.   There-
is no pretense that the employment of $60 in national bank
notes instead of legal tender treasury notes in making payment;
was able to cause any appreciable difference to the relator.
So far as appears or as may be presumed, the payment which·
was made was quite as available to her as one wholly in
treasury notes would have been.   She was not liable to·
prejudice from the mode adopted.   If instead of bank notes;
an equal part had been paid in foreign gold coin, the ground
for mandamus would have been the same as now.   Such·
coin, though of greater real value than legal tender notes,.
but not being legal tender (Rev. Stat. U. S., 712), a payment;
in it would have afforded room for the same objection and
a basis for the same application as the present.   And if·
such had been the state of facts I think counsel would
not have contended that the court was bound to award
mandamus.   The refusal of it in the discretion of the court·
would have been conceded to be proper.

Third.   The remaining reason urged against the order
made by the circuit court and in favor of the remedy
invoked here is that the relator had no actual notice of the
application for new trial.

Here, too, if we assume actual notice to be essential to
the regularity of such an application, a point by no means
to be taken for granted, we find nothing suggesting that
relator was in fact prejudiced in any way by the want of
notice.   The right to pay the damages and costs and have
a new trial was an absolute right under the statute.   Comp.
L., § 6238.   The court could not lawfully deny it or even
fetter it with terms.   *The People ex rel. Gilman v. Circuit
Judge of Wayne*, 21 Mich., 372; *Chautauqua County Bank
v. White*, 23 N. Y., 347; *Shaw v. McMaren*, 2 Hill, 417;
*Ford v. Walsworth*, 22 Wend., 657.   The right being im-
perative, the lack of notice, if strict technical practice·
required it, would hardly seem to justify the high and ex-
treme remedy now sought.   *Kellogg v. Putnam*, 11 Mich.,
344; *Michigan Insurance Co. v. Whittemore*, 12 Mich., 428. ·
If there was irregularity in the matter of paying the dam-

ages and costs or in proceeding without service of notice on the relator or her attorneys the proper way was to move in the circuit court instead of applying here for mandamus. It is to be presumed that that court, if seasonably and properly applied to, would have corrected its own prejudicial irregularities if any such there were.

At any rate, in view of the circumstances disclosed, we consider it inexpedient to award mandamus. The motion is fairly within the principle of *Water Commissioners v. Common Council of East Saginaw*, 33 Mich., 164, and should be denied in the exercise of that discretion which the law has conferred. See also High on Ex. Leg. Rem., § 9.

CAMPBELL, J., and COOLEY, C. J., concurred.

MARSTON, J., did not sit in this case.