Argued and submitted on demurrer to alternative writ, May 16, demurrer sustained and proceedings dismissed May 24, 1927.

# W. W. CAMERON v. DELILIA STEVENS, COUNTY CLERK.

### (256 Pac. 395.)

**Constitutional Law—General and Special Initiative and Referendum Provisions of Constitution must be Given Proper Effect, Regardless of Dates of Adoption (Const., Art: IV, §§ 1, 1a).**

1. Constitution, Article IV, Section 1a, reserving to voters of municipalities initiative and referendum powers reserved to people by Section 1, *held* not controlling as later special provision on local subject, as each must be given its proper effect, regardless of date of adoption.

**Constitutional Law — Constitutional Provisions Relating to Same Subject Matter must be Read and Construed Together.**

2. Constitution must be construed as whole, and effect given to all its provisions, which must be read and construed together so far as they relate to same subject matter.

**Statutes—Constitution Impliedly Authorizes Legislature to Declare Emergency in Any Law not Within Prohibited Classes (Const., Art. IX, § 1a).**

3. Constitution, having enumerated in Article IX, Section 1a, taxation and exemption laws as classes in which the legislature may not declare emergency, impliedly authorizes legislature to declare emergency in any other law.

**Statutes—Power to Declare Emergency Held not Denied by Constitutional Provision Extending Initiative and Referendum Powers to Voters of Municipalities (Const., Art. IV, §§ 1, 1a, 28).**

4. Legislature's power, under Constitution, Article IV, Sections 1, 28, to declare emergency, is not denied by Article IV, Section 1a, extending initiative and referendum powers to voters of municipalities as to local legislation.

**Statutes—Emergency Clause Causes Act to Take Effect on Governor's Approval.**

5. Emergency clause causes act to take effect at once on its approval by Governor.

**Constitutional Law—What is Emergency for Purpose of Causing Act to Take Effect Immediately on Governor's Approval is Purely Legislative Question.**

6. What may be deemed emergency for purpose of causing act to take effect at once on approval of Governor is purely a legislative

4. Emergency clause in statute as affecting referendum, see notes in **Ann. Cas. 1916B, 834; Ann. Cas. 1917E, 985.**

question, and courts will not inquire into it or entertain any question of its sufficiency.

**Statutes—Legislature may Declare Emergency, in Which Case Act is not Subject to Referendum (Const., Art. IV, §§ 1, 1a).**

7. Unless expressly prohibited by Constitution, legislature has as much power to prescribe when act shall take effect as to enact law itself, and to make it take effect at once, may declare emergency, in which case act is not subject to referendum under Constitution, Article IV, Sections 1, 1a.

**Statutes—Legislature Held Authorized to Declare Emergency in Act Providing Means for Counties and Districts to Put into Execution, Initiative and Referendum Powers (Const., Art. IV, §§ 1, 1a, 28; Or. L., § 4111).**

8. Legislature *held* authorized by Constitution, Article IV, Sections 1, 28, to declare emergency in Section 4111, Or. L., providing means for counties and districts to put into execution initiative and referendum powers conferred by Section 1a so as to preclude submission thereof to referendum vote.

---

Constitutional Law, 12 C. J., p. 707, n. 27, 35, p. 708, n. 37, 38, p. 709, n. 50, p. 890, n. 51.

Statutes, 36 Cyc., p. 1193, n. 20, p. 1194, n. 21, 22, 23, p. 1195, n. 25.

ORIGINAL PROCEEDING IN MANDAMUS.

DISMISSED.

For the plaintiff, *Mr. Isham N. Smith.*

For defendant, *Mr. Newton C. Chaney,* District Attorney, *Mr. Porter J. Neff, Mr. A. E. Reames, Mr. John H. Carkin, Mr. Wm. M. Briggs* and *Mr. Rawles Moore.*

RAND, J.—By Chapter 34, Laws of 1927, the legislative assembly enacted a law establishing the City of Medford as the county seat of Jackson County. As enacted the act contained an emergency clause. The defendant is the county clerk of that county. Seeking to invoke the referendum on said measure, plaintiff presented to defendant for filing, a petition

6. Conclusiveness of legislative declaration of emergency requiring statute to take effect at once, see note in 7 A. L. R. 519.

signed by the requisite number of legal voters of the county which defendant refused to file, assigning as the reason therefor that the act was not subject to referendum because it contained an emergency clause. Plaintiff then made application to this court for the issuance of an alternative writ of *mandamus* and an alternative writ was issued directed to the defendant as county clerk requiring her either to file the petition or to show cause for not having done so. The cause shown is by demurrer to the writ upon the ground that the facts stated in the alternative writ are not sufficient to entitle plaintiff to the relief sought, and this presents the sole question for decision.

Article IV, Section 1, of the Constitution provides:

"The legislative authority of the state shall be vested in a legislative assembly, consisting of a senate and house of representatives, but the people reserve to themselves power to propose laws and amendments to the constitution and to enact or reject the same at the polls, independent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly. The first power reserved by the people is the initiative, * * The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety), either by the petition signed by five per cent of the legal voters, or by the legislative assembly, as other bills are enacted. Referendum petitions shall be filed with the secretary of state not more than ninety days after the final adjournment of the session of the legislative assembly which passed the bill on which the referendum is demanded. The veto power of the governor shall not extend to measures referred to the people," etc.

Article IV, Section 1a, of the Constitution among other things provides:

" * * The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special, and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation. Not more than ten per cent of the legal voters may be required to order the referendum nor more than fifteen per cent to propose any measure, by the initiative, in any city or town."

For the purpose of providing means by which counties and districts may put into execution the powers conferred by Article IV, Section 1a, the legislature by Section 4111, Or. L., provided:

"That any law enacted by the legislative assembly, relating only to any county or district in the state of Oregon, other than municipal corporations, may be referred to the people of such county or district for their approval or rejection in the same manner as now or hereafter provided by law for the reference of general laws to the people of the entire state, excepting that when any law relates only to one county the county clerk shall be substituted for the secretary of state, the district attorney for the attorney-general, and the county judge for the governor. When any law affects any district consisting of more than one county, it shall be referred in the manner provided for the reference of acts affecting the entire state, except that the petition therefor shall be signed only by the voters of such district, and in both counties and districts the percentage shall be computed on the vote at the preceding election in such county or district for supreme judge."

1, 2. It is plaintiff's contention that Section 1, the earlier amendment, is general in its terms, and that Section 1a is a later special provision on a local sub-

ject and is therefore the controlling provision upon this question upon the principle that where there are two enactments on the same subject and the earlier one is special and particular, and the latter general in its terms and there is a conflict between the two, the special act must be taken as intended to constitute an exception to the general act under the presumption that the legislature had knowledge of the prior act and did not intend to create a conflict by its later enactment. Without questioning the correctness of this rule in its application to legislative enactments, it must be remembered that these are constitutional provisions, and that they do not depend for their efficacy upon the priority of their adoption. Both are initiative amendments; the first was adopted by the people on June 2, 1902, and the latter on June 4, 1906. The date of their adoption is of no importance, for each provision must be given its proper effect regardless of the time when it was adopted. The Constitution must be construed as a whole and effect must be given to all of its provisions and so far as these provisions relate to the same subject matter, they must be read and construed together: *State* v. *Port of Astoria,* 79 Or. 1 (154 Pac. 399), and cases cited.

3. So far as Section 1 relates to the exercise of the referendum power, it includes all acts passed by the legislature except "laws necessary for the immediate preservation of the public peace, health or safety," and upon the referendum being demanded as to any particular act, it confers upon the whole people of the state the power to approve or reject that act at the polls. It contains no limitation upon the power of the legislature to declare what laws are necessary for the immediate preservation of the public peace, health or safety, and the only limitation contained in the Constitution in respect to the exer-

cise of such power by the legislature is that contained
in Section 1a of Article IX, which declares that "the
legislative assembly shall not declare an emergency
in any act regulating taxation or exemption." The
Constitution having thus enumerated the two classes
of laws in which the legislature may not declare an
emergency, it impliedly authorizes the legislature to
declare an emergency in any law which does not
come within the enumerated classes.

Article IV, Section 1a, extended the initiative and
referendum powers to the legal voters of every
municipality and district "as to all local, special and
municipal legislation of every character in or for
their respective municipalities and districts," thus
conferring upon the legal voters of every munici-
pality and district, the power to adopt or reject at
the polls, any act passed by the legislature or by
any law-making body of such municipality which af-
fected such municipality only and which in its nature
was purely local, special and municipal legislation.
But the powers reserved to the legal voters of such
municipality or district were "the initiative and
referendum powers reserved to the people by this
constitution." These powers so reserved to the legal
voters of a municipality by Section 1a as to munici-
pal legislation are the same powers that were re-
served by Section 1 to the legal voters of the state
as to acts of a general nature passed by the legisla-
ture. Section 1a contains no prohibition upon the
legislature or upon the law-making body of a city
or town to declare an emergency when enacting laws
which come within the purview of Section 1a, nor
does any other provision of the Constitution.

In *Thielke* v. *Albee,* 79 Or. 48 (153 Pac. 793), it
was held that in respect to legislation coming within
the purview of Section 1a, the city council in enact-

ing city ordinances had authority to declare an emergency, and thereby prevent the same from being subject to a referendum by the legal voters of the city, and since under the provisions of Section 1a no distinction exists between the powers of a city council and those of the legislature to declare an emergency, that decision is authoritative here.

4. Article IV, Section 28, of the Constitution expressly recognizes the power of the legislature to declare an emergency, for it provides that: "No act shall take effect until ninety days from the end of the session at which the same shall have been passed, except in case of emergency; which emergency shall be declared in the preamble or in the body of the law." This power is again recognized and confirmed in Article IV, Section 1, and is not denied in anything said in Article IV, Section 1a.

5–8. The effect of an emergency clause upon acts passed by the legslature is to cause the act to take effect at once upon its approval by the Governor and to prevent its not going into effect until after the expiration of the period otherwise prescribed by the Constitution. What may be deemed an emergency for this purpose is purely a legislative question. The courts will not inquire into it, nor entertain any question of its sufficiency: 1 Lewis' Sutherland on Statutory Const. (2 ed.), § 176. Hence, it would seem to follow that unless expressly prohibited by some constitutional provision, the legislature has as much power to prescribe when an act shall take effect as it has to enact the law itself, and that in order to make it take effect at once, it has the power to declare an emergency, and when so declared the act is not subject to the referendum powers of the people. The necessity for this power to be vested in the legislature is obvious for emergencies may may arise where the exercise of the power may be-

come as important and necessary for the protection of the public as the enactment of the law itself. From this it follows, that in enacting the law in question the legislature did have authority to declare that an emergency did exist, and for this reason the demurrer to the writ was well taken and these proceedings must be dismissed, and it is so ordered.

DEMURRER SUSTAINED AND PROCEEDINGS DISMISSED.